CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 13, 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BOBBY E. SALTERS,<br>    Plaintiff, | )<br>)<br>)   Civil Action No. 7:07cv00049 |
| v. | )<br>) |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY<br>    Defendant. | )  By:  Hon. Michael F. Urbanski<br>)        United States Magistrate Judge<br>) |

## MEMORANDUM OPINION

Plaintiff Bobby E. Salters ("Salters") brought this action pursuant to 42 U.S.C. § 1383(c)(3), incorporating 42 U.S.C. § 405(g), for review of the Commissioner of Social Security's ("Commissioner") final decision denying his claims for supplemental security income ("SSI") under XVI of the Social Security Act ("Act").

The parties consented to the Court's jurisdiction on June 12, 2007 and the case is before the Court on cross motions for summary judgment. Following the filing of the administrative record and briefing, the Court heard oral argument on November 11, 2007. As such, the case is now ripe for decision. Having reviewed the record, and after briefing and oral argument, the decision of the Administrative Law Judge ("ALJ") must be reversed and this case remanded for further administrative proceedings. Reversal and remand is appropriate because the ALJ asked a hypothetical question to the Vocational Expert ("VE") that did not accurately reflect the ALJ's own residual functional capacity ("RFC") assessment, thus negating the value of the VE's testimony and necessitating a remand. On remand the ALJ should not only pose a complete hypothetical to the VE, but should also order a second consultative psychological examination for Salters, as the first one yielded results of questionable validity.

# I.

The Court may neither undertake a <u>de novo</u> review of the Commissioner's decision nor re-weigh the evidence of record. <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. <u>See</u> <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. <u>Smith v. Chater</u>, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. <u>Perales</u>, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); <u>Perales</u>, 402 U.S. at 401.

The Commissioner employs a five-step process to evaluate disability claims. 20 C.F.R. § 404.1520; <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 460-462 (1983). The Commissioner considers, in order, whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and (5) if not, whether he or she can perform other work. <u>Id.</u> If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. <u>Id.</u> Once the claimant has established a <u>prima facie</u> case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age,

education, work experience, and impairments, to perform alternative work that exists in sufficient numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Salters was born on March 21, 1966, and finished the eighth grade at about the age of eighteen. (Administrative Record [hereinafter "R."] 328, 350) Salters' applied for SSI on September 3, 2004 and an administrative hearing was held in this matter on May 25, 2006 before an ALJ. The ALJ denied Salters' claim on August 18, 2006. (R. 8-22) The Appeals Council declined review of Salters' application on December 5, 2006, thus making the ALJ's decision the final decision of the Commissioner. (R. 4-6) This application is Salters' fifth application for SSI. (R. 323)

Salters argues that the ALJ's decision should be reversed because the ALJ failed to identify specific jobs that exist in sufficient numbers in the national economy that Salters could perform given his RFC and therefore failed to meet his step five burden. When crafting a hypothetical question to a VE, an ALJ must take into account all the specific limitations of a claimant. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). Otherwise, the relevance and value of the VE's testimony is greatly diminished. Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2006) (quoting Walker, 889 F.2d at 50). Failure to consider all the claimant's functional limitations and then relying upon an incomplete hypothetical when reaching a judgment constitutes an error of law. Hancock v. Barnhart, 206 F. Supp. 2d 757, 767 (W.D.Va. 2002).

At the administrative hearing the ALJ solicited testimony from a VE to determine

3

whether jobs exist in sufficient numbers in the national economy that Salters could perform. The ALJ asked the VE whether jobs would be available for an individual who

> would have the ability to lift and carry 20 pounds occasionally, ten pounds more frequently, be able to stand up to two hours at a time, sit for two hours at a time, would, should not be around heights or hazardous machinery, not be expected to read written reports and instructions since reading at a seventh grade level, engage in no more than occasional overhead reaching, climbing, balancing, stooping, kneeling, crouching or crawling

(R. 352)

The VE identified light office cleaner, ticket taker, packager, bench assembler, inspector, and laundry aide as jobs that a person with the limitations listed above could perform. (R. 353-54)

The ALJ then goes on to ask the VE a second hypothetical with different physical limitations. The ALJ asked whether jobs exist in the national economy that a person could perform if they could stand for thirty minutes at a time, sit for two hours at a time, sit for six to eight hours in an eight hour day with appropriate breaks, stand or walk only for about four hours. The VE testified that, given this hypothetical, an individual with these limitations could be a gate guard or hand packager. (R. 354)

The ALJ's written opinion, however, is internally inconsistent as to this issue at step five. In crafting Salters' RFC, the ALJ concluded that although Salters "can stand and/or walk a total of four hours during an eight hour workday, and sit up to six hours, he is limited to standing/walking for 30 minutes at a time." (R. 20) This RFC mirrors the limitations found in the second hypothetical crafted by the ALJ for the VE. (R. 354) The ALJ's opinion then explains the Commissioner's burden at step five and the use of the VE at the administrative hearing. (R. 20)

4

The portion of the ALJ's opinion that purports to satisfy the Commissioner's burden at step five, however, is fundamentally flawed. The ALJ lists the jobs of ticket taker, assembler, and inspector bench assembly as jobs that Salters could perform based on the RFC the ALJ detailed in his opinion. (R. 10-11) The testimony from the VE that elicited these three jobs was not based on the RFC as outlined in the ALJ's opinion, but based on the first hypothetical posed by the ALJ at the administrative hearing. When probed about the RFC that the ALJ actually used in making his disability determination, the VE did not identify any of the jobs relied upon by the ALJ in the opinion. Therefore, the ALJ relied upon a faulty or incorrect hypothetical in to the VE in attempting to satisfy the Commissioner's burden at step five and as a result the VE's testimony is of little value. Johnson, 434 F.3d at 659 (quoting Walker, 889 F.2d at 50). This constitutes an error of law and as such the case must be remanded. Hancock, 206 F. Supp. at 767.

The Commissioner argues that such error is harmless because the ALJ did actually pose a hypothetical question to the VE that encompassed the limitations found in the RFC that was ultimately used and the VE identified two jobs that a person with those limitations could perform. The Court cannot substitute its judgment for the judgment of the Commissioner and must solely review the record to determine whether the ALJ's decision is supported by substantial evidence. Given the record, the Court cannot determine that the ALJ committed harmless error by relying on an incomplete hypothetical because both jobs identified by the VE in response to the second hypothetical based upon the actual RFC have unresolved questions that the ALJ does not explain in his opinion.

5

The two jobs identified by the VE were hand packager and gate guard. The testimony of the VE as to each of these jobs is troubling and incomplete. As to hand packager there was an issue as to whether the job required medium, light, or sedentary exertion. (R. 354) The VE testified that despite the Appeals Council periodically ruling that hand packager only exists at the medium level, the Dictionary of Occupational Titles ("DOT") does not view it as a medium exertion job. (R. 354) The VE testified that certain hand packaging jobs are classified as sedentary work. (R. 355) Unfortunately, the VE never actually testified as to the numbers of jobs that exist in the national economy for sedentary hand packagers and even indicated on two separate occasions that she knew such jobs existed but could not find them at the moment. (R. 355)

Rather than wait for the information on hand packagers to be properly presented, the ALJ moved on to the gate guard job. (R. 355) Again, the testimony from the VE on gate guards is incomplete. (R. 356-57) At one point the VE testified that she could not find any sedentary gate guard jobs but that she knows they exist. (R. 356) The ALJ then asked the VE if any light gate guard jobs exist and the VE testified that over 964,000 exist nationally. (R. 356) The VE then testified that the job of gate guard is performed at the semi-skilled level according to the DOT because it requires one to three months of training. (R. 357) For some reason, unexplained in the record, the ALJ and VE both assert that in Virginia it is performed at the unskilled level which would fall under Salters' RFC. (R. 357) Furthermore, in West Virginia it is "even less skilled." (R. 357) Unfortunately, this discrepancy is not explained or explored, just announced. Under 20 C.F.R. § 404.1566 an ALJ may use the DOT and testimony of a VE to determine whether the claimant can find jobs in the regional and national economy. According to Social Security

Ruling 00-4p, the testimony of a VE should normally be consistent with the DOT. When an apparent conflict exists between the two, the ALJ must elicit a reasonable explanation on the record as to the reason for the conflict before relying on such testimony. Social Security Ruling 00-4p. Furthermore, the ALJ must also ask the VE whether his testimony is consistent with the DOT. Id. When an ALJ relies upon testimony from a VE that is incorrect or outdated, then the ALJ's decision is not supported by substantial evidence and thus necessitates a remand. English v. Shalala, 10 F.3d 1080, 1084-85 (4th Cir. 1993)

Here, the ALJ did not develop the record as to why gate guards undergo a lower level of training in Virginia and West Virginia and why the VE's testimony differed from that of the DOT. As such, the Commissioner's argument that the ALJ's mistake at step five constitutes harmless error must be rejected, because even though two jobs were identified using the correct RFC, the evidence as to these jobs is flawed and cannot be said to constitute substantial evidence. The Court cannot find harmless error and the case must be remanded for further administrative proceedings consistent with this opinion.

### III.

Salters also argues that the ALJ's decision is not supported by substantial evidence, because the ALJ erred as a matter of law by not finding Salters disabled at step three of the sequential evaluation. Salters argues that he meets or equals an impairment described in Appendix 1 Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d), (e); 20 C.F.R. Pt. 404, Subpt. P, App. 1. Specifically, Salters alleges that he meets or equals the Commissioner's listing

7

Case 7:07-cv-00049-mfu   Document 17   Filed 12/13/07   Page 7 of 10   Pageid#: 75

requirements of Appendix 1, § 12.05(c) for mental retardation.[1] As this case is already being remanded the Court need not reach the issue at this time. The Court, however, does direct the Commissioner to obtain another consultative psychological exam of Salters to help determine whether Salters meets the listing requirement for mental retardation.

In order to meet a listing, a claimant must show that all criteria contained in the listing are met. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992). Meeting only some criteria for a listing "no matter how severely, does not qualify." Sullivan, 493 U.S. at 530. Listing 12.05(c) requires a valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other impairment imposing an additional and significant work-related limitation of function. See id.

Salters' application alleges that he became disabled on March 1, 2002. (R. 11) At the May 25, 2006 hearing, counsel for Salters requested that the ALJ order consultative psychological and neurological examinations of Salters. (R.326) The ALJ declined to order any further psychological examinations of Salters, as Salters had already undergone a consultative psychological examination on December 29, 2004. (R. 11) It is this examination that serves as the basis for Salters' argument that he meets the listing for mental retardation. (R. 239-243) Dr. Jerome Nichols opined that "Salters is currently functioning within the mentally retarded range of intelligence." (R. 240) Dr. Nichols administered the Wechsler Adult Intelligence Scale - Third Edition and Salters' Verbal Score IQ was 65, his Performance Score IQ was 67, and his

---

[1] 12.05(c) requires a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

Full Scale Score was 63. (R. 240) All three are within the range mandated by the mental retardation listing.

The ALJ, however, disregarded the test results in reaching his conclusion that Salters does not meet the requirement for mental retardation. Dr. Nichols' report indicates that there "was some question about the validity of the results." (R. 240) Dr. Nichols' basis for this statement is that Salters seemed oppositional at times. (R. 240) Dr. Nichols also indicated that Salters could be functioning in the borderline range of intelligence. (R. 240) The ALJ found the results of the testing to not be valid based on these statements and therefore found that Salters did not meet the mental retardation listing, as the listing specifically requires valid scores. (R. 15) Furthermore, the ALJ declined to order another psychological examination of Salters because he deemed it unnecessary.

Salters argues that the ALJ acted arbitrarily in disregarding the test results as invalid evidence, because Dr. Nichols simply questioned the validity of the results and did not determine them to be invalid. The argument questions the propriety of the ALJ making a medical determination as to an issue that should be reserved for a medical expert. As there is a question as to the validity of the test results, the Court directs the Commissioner to order another psychological evaluation of Salters in order to obtain conclusive results as to Salters' IQ.

## IV.

For the foregoing reasons, the Court concludes that the ALJ's decision is not supported by substantial evidence and this case must be remanded for further administrative consideration consistent with this opinion. The ALJ's relied upon an incomplete hypothetical to the VE which constitutes an error of law and necessitates a remand. Furthermore, on remand a second

9

psychological examination must be obtained to determine whether Salters meets the listing requirements for mental retardation. Accordingly, the defendant's motion for summary judgment is denied and the case shall be remanded consistent with this recommendation.

The Clerk of Court hereby is directed to send a copy of the Memorandum Opinion and accompanying Order to all counsel of record.

**ENTER:** This 13th day of December, 2007.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge